UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:24-mc-00026-SEB-KMB |
| | ) | |
| PIERCE APPRAISAL, INC., et al., | ) | |
| | ) | |
| Respondents. | ) | |

**REPORT AND RECOMMENDATION REGARDING PETITIONER'S MOTION TO ENFORCE THE ADMINISTRATIVE SUBPOENA**

This matter is before the Court on the Petitioner's Motion to Enforce Subpoena against Respondents. [Dkt. 1.] Petitioner United States of America, on behalf of the Department of Housing and Urban Development ("HUD"), seeks to enforce an administrative subpoena against Pierce Appraisal, Inc., and Jeffrey Pierce (collectively, "Pierce") under 42 U.S.C. § 3614(c). Pierce opposes the United States' Motion to Enforce. [Dkt. 12.] This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion. [Dkt. 24.]

At Pierce's request, the Court conducted an evidentiary hearing on the pending motion on November 7, 2024. [Dkt. 13.] Being duly advised, the undersigned now issues this Report and Recommendation to the District Judge, recommending that the United States' subpoena be enforced against Pierce for the reasons set forth below.

**I.   RELEVANT BACKGROUND**

HUD is the administrative agency that enforces the Fair Housing Amendments Act of 1988 (the "Fair Housing Act"), under the broader scheme of Title VIII of the Civil Rights Act. 24 C.F.R. § 100.1; 42 U.S.C. §§ 3600-20. HUD investigates complaints and may issue charges in accordance

with the processes outlined in 42 U.S.C. § 3610. The Secretary of HUD may also issue subpoenas and order other discovery while investigating possible housing discrimination. 42 U.S.C. § 3611. The United States may seek to enforce a subpoena in the appropriate district court if necessary. 42 U.S.C. § 3614(c).

In March 2020, Pierce conducted an appraisal on a home in Indianapolis, used three comparable sales in its analysis, and ultimately appraised the home at $125,000. [Dkt. 12 at 1-3.] The homeowner filed an appeal with Pierce that listed three additional comparable sales, each of which Pierce determined were not actually comparable. [*Id.* at 3.] The homeowner then filed a complaint with the Professional Licensing Enforcement and Homeowner Protection Unit of the Indiana Attorney General's Office, alleging deficiencies in the appraisal and racial bias. [*Id.* at 4.] The Attorney General's office issued a "Warning Letter" to Pierce based on a failure to make cash equivalent concession adjustments in the appraisal but declined to investigate further. [*Id.*]

The homeowner also filed an administrative complaint with HUD, and HUD initiated an investigation that resulted in a charge of discrimination against Pierce (the "Charge"). [Dkt. 1 at 2.] The Charge is based on Pierce's appraisal of the home at $125,000 as compared to a loan estimate of $187,000 prior to the Pierce appraisal and a $259,000 appraisal that the homeowner received after Pierce's appraisal. [*Id.*] HUD's investigation "seeks to determine whether Pierce illegally appraised Complainant's home at a lower value because of [their] race, color, or the location of [their] home being in a historically African American neighborhood." [*Id.* at 3.]

Kamal Ganjalikhani, who is an Equal Opportunity Specialist at HUD's Office of Fair Housing and Equal Opportunity ("FHEO"), has filed a declaration explaining HUD's process in investigating these kinds of charges. [*See* dkt. 1-1.] John Meade, who is an Enforcement Branch

2

Chief for HUD's Chicago office of FHEO, provided testimony at the evidentiary hearing and explained his experience with both the Pierce investigation and the typical path of HUD's process.

Ms. Kimberly Pierce testified at the evidentiary hearing on behalf of the Pierce Respondents regarding Pierce's cooperation during HUD's investigation. Her husband, Mr. Pierce, was interviewed in person in January 2022 and has answered written questions posed by HUD three times. [Dkt. 12 at 8, n.3.] Mr. Ganjalikhani issued data request letters to Pierce and, because of Mr. Pierce's ill health, began sending him questions in writing rather than continuing to interview him in person. [Dkt. 1-1 at 2.]

The original HUD data request that the subpoena is based on was sent on June 28, 2023, and contained two requests for appraisal documents: (1) appraisal reports for the list of appraisals attached and, (2) appraisal reports for any appraisal conducted by Pierce from January 1, 2020, to the date of the request for properties in Indianapolis in which comparable properties selected were over a mile away from the property being appraised. [*Id.* at 2-3.] Pierce objected to this data request, and FHEO subsequently determined that a subpoena should be issued. [*Id.* at 3.] The Regional Director, Lon Meltesen, issued the subpoena to the Respondents but removed the second request based on the Respondents' concerns. [*Id.* at 3-4.]

The subpoena at issue demands that Pierce produce its files to HUD related to 77 appraisals performed between January 9, 2020, and May 27, 2021. [*Id.* at 4; dkt. 12 at 10.] Mr. Ganjalikhani selected each appraisal based on factual categories related to the appraisal that was the subject of the Charge (the "Charge Appraisal") including proximity to green space, similar traffic flow, or property within a historically Black neighborhood. [Dkt. 1 at 4.] He explained that these appraisals were "relevant to the investigation to discern Respondents' appraisal practices." [*Id.*] Pierce refused to provide any of the requested appraisal files and instead filed a Motion to Quash

3

the Subpoena, arguing that the appraisals sought were not relevant. [*Id.*] In November 2023, Director Meltesen issued a written order denying the Motion to Quash and ordering Pierce to produce the documents requested in the subpoena. [*Id.*] Respondents again refused. [Dkt. 1-1 at 61.]

Mr. Meade and Mr. Ganjalikhani met and discussed ways to reduce the potential burden of compliance for Pierce, and on December 1, 2023, HUD offered to have HUD investigators review the appraisals onsite at Pierce's location and copy only those documents needed to complete the investigation. [Dkt. 1-1 at 5; dkt. 12 at 19.] Pierce refused but proposed that it produce five appraisal reports from the same client for HUD's review. [Dkt. 12 at 20.] HUD refused, stating that such a small sample size would not be sufficient to "discern Respondents' appraisal practices in the relevant categories." [Dkt. 1-1 at 5.] FHEO sent a letter to Pierce in February 2024, requesting the documents from the subpoena, but Pierce again refused to produce anything. [*Id.*]

The United States filed its Motion to Enforce Subpoena on April 26, 2024. [Dkt. 1.] It argues that enforcement of the administrative subpoena is necessary because Pierce has not cooperated with HUD's investigation and the appraisals requested are essential for HUD to complete its investigation into Pierce's allegedly discriminatory appraisal practices. [*Id.* at 5-7.] Pierce filed its answer opposing the subpoena on the grounds that the subpoena seeks information that is not relevant and that the subpoena itself is unduly broad or burdensome. [Dkt. 12.] The Court held an evidentiary hearing at Pierce's request, and the matter is now ready for the Court's consideration.

## II. APPLICABLE LEGAL STANDARD

Administrative agencies, including HUD, have broad power to issue and enforce administrative subpoenas outside of a court proceeding, but this power is not without limits.

*United States v. Powell*, 379 U.S. 48, 58 (1964). Specifically, an administrative subpoena must be issued in good faith and for a proper purpose. *Id.* If the recipient of a subpoena does not comply, the United States may seek to enforce the administrative subpoena in an appropriate proceeding in a district court. 42 U.S.C. § 3614(c).

The district court has an "oversight role" in this process, but it is "sharply limited" to ensuring the agency has met its burden. *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *Inspector Gen. v. Banner Plumbing Supply, Co.*, 34 F. Supp. 2d. 682, 684 (7th Cir. 1998). The court must enforce an administrative subpoena if the information sought is "reasonably relevant." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C.C. 1977) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). The administrative agency that issued the subpoena must establish that (1) the subpoena was issued for a legitimate purpose, (2) the inquiry is relevant to the purpose, (3) the information is not already in the agency's control, and (4) the proper administrative steps have been followed. *Powell*, 379 U.S. at 57-58.

Courts generally consider the first three factors and assess whether the demand is "excessively burdensome," which is shown if compliance would "threaten the normal operation of a respondent's business." *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995); *Inspector Gen., U.S. Dept. of Hous. and Urb. Dev. v. St. Nicholas Apts.*, 947 F. Supp. 386, 388-89 (C.D. Ill. Nov. 15, 1996) (applying the factors to a HUD subpoena). Generally, the burden of proof is on the United States since it is attempting to enforce the subpoena. *See Powell*, 379 U.S. at 58 (holding that "[the Commissioner] must show" the factors discussed). If the United States meets its burden and a respondent is arguing that complying with the subpoena would be unduly burdensome, however, then the burden shifts to the respondent to prove that compliance would be unduly burdensome. *St. Nicholas Apts.*, 947 F. Supp. at 392 (citing *Powell*, 379 U.S. at 58). Such

5

a showing in these cases is a "difficult burden." *Walsh v. Alight Solutions LLC*, 44 F.4th 716, 724 (7th Cir. 2022) (internal citations omitted); *see also E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995) (enforcing an administrative subpoena even where compliance would require 203,994 employee hours).

### III. DISCUSSION

The Parties' briefing and presentation of evidence at the evidentiary hearing focus on two main issues. First, whether the information sought by HUD in the subpoena at issue is relevant, and second, whether complying with the subpoena would be unduly burdensome for Pierce.[1] As explained above, the United States bears the burden of proof on the first inquiry and Pierce bears the burden on the second. The Court will summarize the Parties' arguments related to each of these issues and then make findings of fact and conclusions of law as necessary to recommend a resolution of the pending motion.[2]

**A. Whether the Information HUD Seeks is Relevant to the Investigation**

In its Motion to Enforce the Subpoena, the United States argues that HUD has "determined that Respondents possess documents relevant and necessary to HUD's investigation." [Dkt. 1 at 6.] According to the United States, the appraisals HUD requests are "reasonably limited in scope" and the documents are "relevant and material to the investigation." [*Id.*] Mr. Ganjalikhani

---

[1] In its opposition brief, Pierce raised a cursory argument that the United States Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), applies to this Court's analysis of the subpoena at issue. [Dkt. 12 at 10-12.] At a very high level, *Loper Bright* stands for the proposition that federal courts no longer must defer to a federal agency's interpretation of an ambiguous statute. *Loper Bright*, 144 S. Ct. at 2273 ("But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). At the hearing, the undersigned directly asked Pierce's counsel what allegedly ambiguous statute was at issue in this case, and Pierce's counsel quickly withdrew the argument. Thus, *Loper Bright* need not be addressed further.

[2] To the extent any finding of fact should be deemed a conclusion of law, it shall be so, and vice versa.

6

explained that he selected the appraisals based on categories relevant to the investigation to determine Pierce's base appraisal practices. [Dkt. 1-1 at 12.] Mr. Meade testified that this limited category was selected by narrowing the nearly 15,000 appraisals that Pierce has completed, [dkt. 14 at 3], down to approximately 300 that occurred from January 2020 to May 2021 and then identifying the most relevant appraisals in that time, resulting in the 77 appraisal files that the subpoena requests.

Pierce admits that the standard for what is "relevant" in an administrative subpoena is interpreted broadly. [Dkt. 12 at 12.] Pierce contends, however, that a request must be relevant to HUD's inquiry and "HUD has provided no cogent explanation as to why 77 unrelated appraisals conducted over a 15-month period are relevant" to determine whether Pierce "committed a discriminatory housing practice." [*Id.* (emphasis removed).] Pierce argues that the information requested is not relevant because

> [e]very appraisal is unique to a specific property as of the effective date of the appraisal; [a]ppraisals performed before or after the effective date of the subject appraisal represent different fluctuations of market conditions; HUD seeks appraisals performed pre-pandemic, during the lock down, and postpandemic; HUD seeks appraisals performed for properties that are not located in the same market area as the subject property, and thus are not considered similar or comparable market date to the subject property.  Any appraisal performed after the effective date of the subject appraisal includes data that was not available at the time of observation for the subject appraisal, and is thus irrelevant to the subject appraisal; and [t]he purpose of an appraisal report is to estimate the fair market value of the property under observation as of the effective date of the observation.

[*Id.* at 12-13.] Pierce also argues that the categories for the appraisals selected by Mr. Ganjalikhani were flawed. [Dkt. 12 at 13.] Specifically, Pierce asserts that the subpoena is overly broad in time and scope since it requests information over a "15-month period" and of geographic areas that are allegedly not comparable. [Dkt. 12 at 18.]

7

The United States did not file a reply brief and the time to do so has passed. However, the United States did provide argument at the evidentiary hearing related to relevancy. According to Mr. Meade, when there is no direct evidence of discrimination—and there is none in this case—it is HUD's practice to gather a representative sample of the appraisals conducted in the relevant time frame to understand the standard practice of the investigated company or individual. Mr. Meade testified that the 77 appraisals at issue were selected because of their relevance to formulating this representative sample. Mr. Meade also testified regarding HUD's position on why the appraisals were needed—specifically, that the appraisals are necessary to form a basis for how Pierce generally performs appraisals to establish whether the Charge Appraisal was a deviation in practice. Mr. Meade emphasized that the information obtained could ultimately be exculpatory or inculpatory for Pierce.

Pierce also made arguments regarding relevancy at the evidentiary hearing. Ms. Pierce, who is an appraiser for Pierce and married to Mr. Pierce, testified that she does not believe the requested appraisals bear any relevance to the Charge at issue here. Ms. Pierce testified that because every appraiser must follow the Uniform Standards of Professional Appraisal Practice ("USPAP"), every appraisal should be individually and independently reviewed against USPAP guidelines. Ms. Pierce emphasized that it would not be possible to search for a pattern by comparing appraisals against each other because every appraisal would be subject to a different scope of work. This scope of work is different for each appraisal management company ("AMC") and, thus, what is noted in each report or is investigated for each property is different based on the scope of work required by that AMC. Pierce's argument is that without knowing the scope of work for the appraisals, no rational conclusion can be drawn by comparing one appraisal to another. Thus, Pierce argues that the information HUD seeks through the subpoena is not relevant.

The undersigned appreciated the testimony of both Mr. Meade and Ms. Pierce at the evidentiary hearing. The undersigned finds Mr. Meade to be a credible witness who is very knowledgeable about HUD investigation practices in discrimination charge cases. The undersigned also finds Ms. Pierce to be a credible witness who is very knowledgeable about the appraisal industry from her company's perspective. The undersigned notes, however, that much of Ms. Pierce's testimony focused on supporting Pierce's position that, ultimately, the documents HUD seeks through its administrative subpoena will not show discrimination. Specifically, because Ms. Pierce emphasized how unique each appraisal is and was adamant that HUD will not find any evidence of racial discrimination in the 77 appraisal files requested, she contends that Pierce should not have to produce the files at all. That is simply not the standard the Court must apply when determining whether to enforce an administrative subpoena.

The basis for what is relevant for an administrative subpoena is extremely broad. "An administrative subpoena will be enforced, when challenged on the basis of relevancy, if the material subpoenaed 'touches a matter under investigation.'" *E.E.O.C. v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) (quoting *Motorola v. McLain*, 484 F.2d 1339, 1345 (7th Cir. 1973)). Relevancy in an "investigatory proceeding" is subject to a "more relaxed" standard than in an adjudicatory proceeding. *F.T.C. v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.D.C. 1992). Specifically, subpoena material must only be "relevant to the *investigation*—the boundary of which may be defined quite generally." *Invention Submission Corp.*, 965 F.2d at 1090 (original emphasis).

Recognizing that the burden of showing relevancy is not high, the undersigned concludes that the United States has met its burden to show that the appraisal files HUD seeks through its administrative subpoena to Pierce are relevant. Mr. Meade testified that the specific appraisal files

9

sought were selected by narrowing the nearly 15,000 appraisals that Pierce completed down to approximately 300 that occurred from January 2020 to May 2021 and then further narrowing it down to the most relevant appraisals in that timeframe, resulting in the 77 appraisal files that the subpoena requests.[3]  While Ms. Pierce emphasized how unique each appraisal is and was adamant that HUD will not find any evidence of racial discrimination in the 77 appraisal files requested, her conclusions about what HUD may determine after reviewing the files puts the cart before the horse and is not the applicable standard on a motion to enforce an administrative subpoena.  Rather, as detailed above, the standard at this stage of the proceedings is simply whether the information sought is relevant to HUD's investigation.  *Powell*, 379 U.S. at 57-58.  The undersigned concludes that it is.

Pierce incorrectly assumes that HUD is requesting 77 appraisals to make factual comparisons between the Charge Appraisal and each of the additional appraisals provided, but Mr. Ganjalikhani's declaration and the testimony given by Mr. Meade make it clear that this is not the case.  Mr. Ganjalikhani explained that he chose these 77 appraisals based on "categories that [he] determined from the factual circumstances of the case to be relevant to the investigation *to discern Respondents' appraisal practices*."  [Dkt. 1-1 at 4 (emphasis added).]  HUD's investigation into Pierce's appraisal process requires the agency to review appraisals from a similar time frame to the

---

[3] Pierce's relevancy challenge focuses more on the overall scope of the inquiry rather than challenging the specific timeframe at issue.  The Court will not develop arguments for Parties, and underdeveloped arguments are waived.  *Shipley v. Chicago Bd. of Election Comm's*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are undeveloped, cursory, and lacking supporting authority are waived.").  To the extent that Pierce's argument implicitly challenges the timeframe of the files requested in the subpoena, the undersigned notes that the Charge Appraisal took place on March 31, 2020, and the Charge was filed on March 9, 2021.  [Dkts. 12 at 2; 1-1 at 63.]  The requested appraisals date from January 9, 2020, to May 27, 2021, [dkt. 1-1 at 33], which means HUD seeks appraisals from just before and just after that time frame.  The undersigned concludes that is a reasonable scope based on the evidence and arguments presented by the Parties.

Charge to determine Pierce's standard of practice. Without more data to establish a standard of practice, HUD is unable to determine whether Pierce's evaluation of the Charge Appraisal violated the Fair Housing Act. A selection of appraisals is therefore directly relevant to HUD's investigation. Given the evidence presented regarding HUD's methods of investigation and the low bar the United States needs to meet to show relevancy, the undersigned finds that the United States has met its burden to show that the subpoenaed information is relevant to the ongoing investigation.

Pierce admits that the standard for what is "relevant" in an administrative subpoena is interpreted broadly. [Dkt. 12 at 12.] Pierce's conclusory arguments about why HUD may not find what it is looking for in the documents requested is not the appropriate inquiry here. Rather, "[a]n administrative subpoena will be enforced, when challenged on the basis of relevancy, if the material subpoenaed 'touches a matter under investigation.'" *Elrod*, 674 F.2d at 613. The undersigned finds that the material subpoenaed touches on a matter under investigation, given the evidence that it will further HUD's investigation into baseline appraisal practices of Pierce around the time of the Charge Appraisal. For these reasons, the undersigned concludes that the United States has met its burden to show that the 77 requested appraisals are relevant to the investigation at issue.

## B. Whether Compliance Would Be Unreasonably Burdensome for Respondent

Pierce argues that the burden on it to comply with the subpoena is too great and not proportional to the needs of the case. [Dkt. 12 at 16.] As previously stated, the burden is on Pierce to prove that compliance would be unduly burdensome, *St. Nicholas Apts.*, 947 F. Supp. at 392, and that is a "difficult burden," *Walsh*, 44 F.4th at 724.

In support of its argument, Pierce emphasizes that its files are stored at the home of Mr. and Ms. Pierce and that Mr. Pierce's health has become worse in the years since the Charge. [Dkt. 12 at 16.] At the hearing, Ms. Pierce stated that she would have to manually pull all the paper files that the subpoena seeks and that such labor would cause financial hardship since it would take time out of her work schedule, which is already limited due to her husband's health. Pierce also contends that the information sought is confidential and she believes she would need her clients' consent to produce it.

The United States argues that the subpoena is not unduly burdensome, particularly since the records at issue are all within Pierce's control. The United States emphasizes significant accommodations that HUD has already made throughout the process because of Mr. Pierce's health issues, including sending written questions and data requests instead of insisting on in person interviews. HUD also offered to physically go to Pierce's office to review the requested files, if preferred, rather than requiring Pierce to produce them.

Pierce offers the United States two alternatives to try to lessen the burden. First, Pierce suggests that it could provide five appraisal reports from one AMC after garnering consent from those clients. [Dkt. 12 at 20.] Alternatively, at the hearing, Pierce suggested that it provide the United States with the addresses for the AMCs and the United States could subpoena the AMCs for the appraisal reports.

An administrative subpoena will not be enforced if the demand is unreasonably or excessively burdensome, meaning that "compliance would threaten the normal operation of a respondent's business." *Quad/Graphics*, 63 F.3d at 645. The burden of showing that the subpoena is unreasonably or unduly burdensome is on the subpoenaed party. *St. Nicholas Apts.*, 947 F. Supp. at 392 (citing *Powell*, 379 U.S. at 58). Parties subject to a subpoena will always incur some

12

inconvenience or burden when complying with a subpoena; courts have noted this is not only "to be expected" but is in fact "necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco, Inc.*, 555 F.2d at 882.

    After considering the Parties' arguments and the evidence presented at the hearing, the undersigned concludes that Pierce has failed to show that complying with the subpoena at issue would be unreasonably burdensome. Pierce must show that compliance would threaten the normal operation of its business. While Ms. Pierce testified at a high-level to general inconvenience it would cause, the undersigned does not find the evidence presented anywhere near what would be necessary to meet the very high standard required.[4] In fact, no specific evidence was presented regarding how many hours would be necessary for Pierce to expend to comply, and the hours needed surely are lessened by the various accommodations HUD has made to try to limit the burden on Pierce. Specifically, HUD has offered to send enforcement officers to Pierce to inspect the paper files as opposed to requiring Pierce to copy and produce all of them itself. The financial pressure that Pierce claims will come from having to take time out of work to find and turn over the documentation would also, at least partially, be alleviated by HUD's offer to send enforcement agents to Pierce's location.

    The undersigned acknowledges that Pierce is a small business, but that alone does not mean that HUD's subpoena is unduly burdensome simply because of Pierce's possible failure to keep its appraisals from the past five years stored in an accessible way. Ms. Pierce repeatedly cited USPAP standards in her testimony at the hearing, so she is likely aware of the USPAP mandate that records be kept for at least five years. USPAP, *"Record Keeping Rule"* as seen in EXCEL APPRAISE, *What

---

[4] For example, *Quad/Graphics* held that the respondent in that case did not meet this high burden even though the company provided an affidavit that compliance would require 203,994 employee hours. 63 F.3d at 648-49.

13

*is the Record Keeping Rule in Appraisals?*, https://www.excelappraise.com/glossary/what-is-the-record-keeping-rule-in-appraisals/ (requiring appraisers to keep all supporting documentation used in an appraisal for a minimum of five years after the report date) (last visited January 8, 2025).

In efforts to decrease the burden on itself, Pierce suggests alternate ways for HUD to obtain the information it seeks. Pierce suggests that it provide five appraisals from the same AMC to HUD after getting consent to do so. Alternatively, Pierce suggests that HUD subpoena the AMCs or the clients directly for the requested appraisals. The undersigned again concludes that Pierce is putting the cart before the horse. It is not Pierce's place to tell HUD how to do its investigation or alternative ways to potentially get the information HUD seeks through the subpoena at issue. Rather, the narrow issue before the Court at this time is whether HUD has shown that the information it seeks is relevant to its investigation—the undersigned has already concluded it is—and whether Pierce has met its high burden of showing that compliance would be unreasonably burdensome. There is no dispute that the information sought is within Pierce's possession, and just because there could be alternate ways for HUD to get it does not mean that the burden on Pierce is unreasonably burdensome.

Pierce claims that there are confidentiality issues with producing the appraisals requested. First, Pierce points to the USPAP, which provides that an appraiser must not disclose confidential information or appraisal results to anyone other than from a specified list. [Dkt. 12 at 17 (citing 2020-2021 USPAP, *Ethics Rule*, 8-9).] Second, Pierce notes that the Appraisal Institute requires confidentiality. [Dkt. 12 at 17 (citing Appraisal Institute, *Canon 4*).] Pierce's arguments are unpersuasive in this context because these industry texts also acknowledge that third parties may receive confidential information from appraisers when required by law. *See* USPAP, Ethics Rule 8-9 (noting that confidential information may be disclosed with due process of law); Appraisal

14

Institute, Canon 4-1(b) (noting that confidential information may be disclosed to third parties "when and to the extent that there is a legal obligation to do so by statute, ordinance, or court or regulatory order"). Moreover, as the undersigned suggested at the hearing, the Parties could move for a protective order from this Court to further protect the disclosed information if appropriate.

For these reasons, the undersigned finds that Pierce has not met its high burden to show that complying with the subpoena would be unreasonably burdensome. Accordingly, the undersigned must recommend that the District Judge grant the United States' Motion to Enforce Subpoena. [Dkt. 1.] As the United States acknowledged at the hearing, it is possible that the evidence produced in response to HUD's subpoena will actually exonerate rather than implicate Pierce with regard to the Charge. Thus, the undersigned cautions against reading the recommendation herein as anything more than what it is—specifically, a finding that the United States has met its burden to show that the information sought is relevant to the HUD investigation and that Pierce has not met the high burden of showing that compliance would be unduly burdensome.

### IV.   CONCLUSION

For the reasons detailed herein, the Magistrate Judge **RECOMMENDS** that the District Judge **GRANT** Petitioner's Motion to Enforce Subpoena against Pierce. [Dkt. 1.] Any objections to the Report and Recommendation **must** be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections **within 14 days** will constitute a waiver of subsequent review absent a showing of good cause for that failure. **The Parties should not anticipate any extension of this deadline or any other related briefing deadlines.**

**SO ORDERED.**

Date: 1/8/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

15

Distribution:

All ECF-registered counsel of record via email